# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| BRENDA JEAN DAVIES, | ) CASE NO. 4:25-CV-00609-CEH |
| Plaintiff, | ) JUDGE CARMEN E. HENDERSON |
| | ) UNITED STATES MAGISTRATE JUDGE |
| v. | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant, | ) **MEMORANDUM OPINION AND ORDER** |

## I. Introduction

Brenda Jean Davies ("Davies" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 12).  For the reasons set forth below, the Court AFFIRMS the Commissioner's final decision finding Davies not disabled.

## II. Procedural History

On October 14, 2022, Davies filed an application for DIB, alleging a disability onset date of October 1, 2018.  (ECF No. 8, PageID #: 45). The application was denied initially and upon reconsideration, and Davies requested a hearing before an administrative law judge ("ALJ"). (*Id.*).  On January 25, 2024, an ALJ held a hearing, during which Claimant, who appeared with a representative, and an impartial vocational expert testified.  (*Id.* at PageID #: 59-84).  On February 28, 2024, the ALJ issued a written decision finding Davies was not disabled.  (*Id.* at

1

PageID #: 45-54). The ALJ's decision became final on February 3, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 29-31).

On March 27, 2025, Davies filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 9, 13, 14). Davies asserts a single assignment of error: "The ALJ did not reasonably find that this 'advanced aged' Plaintiff can perform the arduous standing/walking and lifting requirements of medium work (the *only* RFC finding supporting a denial of benefits pursuant to SSA's 'grid rules'), requiring remand for further proceedings." (ECF No. 9 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Davies's hearing:

> The claimant alleges being unable to work primarily due to pain she experiences in her feet. She must wear prescribed shoes from her podiatrist as well as custom orthotics. She testified to following up with her podiatrist every two weeks for a treatment procedure. She reports being limited in the number of tasks she can complete in a day due to her foot pain. For example, she stated that she can either run errands or grocery shop, and she can prepare dinner or wash dishes. However, she is unable to perform both activities in one day. The claimant also testified that she needs to elevate her legs throughout the day.

(ECF No. 8, PageID #: 50).

#### B. Relevant Medical Evidence

The ALJ also summarized Davies's health records and symptoms:

> The record applicable to the claimant's severe impairments does not begin until March 2019 and is initially sparse at best. At that time there is a primary care physician's notation stating that she is treating with a B-complex supplement for idiopathic neuropathy (2F:23). However, there are no complaints regarding her feet and no positive findings upon examination, including normal sensation (2F:25). It is not until May 2020 that the first complaints

2

associated with the claimant's feet is noted in the record (see 2F:14-20). At that time she reported burning and pain in the bilateral feet and stated that she avoids walking barefoot. The physical examination showed large calluses on both feet. The record suggests that she had been treating with a podiatrist and using orthotics, but was in the process of establishing with a new podiatrist after moving.

In August 2020 the claimant is evaluated by podiatry for reports of intermittent pain in the balls of the bilateral feet, lasting for about 30 years. She reported a history of debriding lesions that provided temporary relief. The physical exam noted edema with callus, pain on palpation and pressure, and a discrete hyperkeratotic lesion. She was assessed with bursitis, porokeratosis, and hyperkeratosis/hyperhidrosis. (See 5F:11.) The claimant was prescribed an antifungal cream and custom orthotics were recommended. Within a month she reported about 80% improvement in her pain; however, she was using over the counter orthotics, which her physician described as being noncompliant. Her pain then began to slightly worsen and she agreed to custom orthotics and was also advised on stretching exercises. She reported improvement thereafter. (See 5F:14, 12, 9, and 5.)

Over the course of the next few months her pain continued to gradually improve. By March 2021 she reported 100% relief (5F:17). Although her pain returned the following month, the claimant reported that she had purchased new sandals and was not wearing her custom orthotics (5F:19). Again in May 2021 she reported mild pain, also reported working outside extensively building a rock wall and performing other heavy projects (5F:19). The examination noted that she was noncompliant with the custom orthotics and had mild recurrent bursitis with associated painful porokeratosis and metatarsalgia but showed no signs/symptoms of chronic hyperkeratosis/hyperhidrosis and was responding well to treatment (5F:19). Of note, she did not report any issues with her feet to her primary card [sic] physician during her annual wellness examination that month, nor were any positive findings noted (see 2F:8-13).

The claimant again reported extensive outdoor work in September 2021 with fall cleanup and preparation of her garden and reported only intermittent compliance with her treatment (5F:22). She also reported going to Mexico on vacation. Despite her level of activity, she relayed having only mild discomfort (*Id.*).

Although notes dated December 2021 do not document the

claimant's level of pain or discomfort, she was noted to still have some neoplasm pain in the plantar central balls bilaterally (5F:21). The physical exam, consistent with most of the documented exams by the podiatrist, noted multiple incurvated borders with deformed thick yellow crumbly nails to varying degree, very mild residual functional capacity hyperkeratosis/hyperhidrosis bilaterally, and residual functional capacity discrete hyperkeratotic lesion with pain on direct pressure (5F:21). The claimant then underwent surgical excision of the benign neoplasm of the plantar balls bilaterally, with surgery dates in January 2022 and March 2022 (5F:23, 7, 2). Immediately after surgery the claimant began reporting improvement, with statements of 100% improvement bilaterally by April 2022 (see 2F:24-25). She also reported to her primary care physician that her feet were feeling better after surgery (2F:1).

The claimant returned with reports of some pain in August and September 2022 (5F:26). The physician again noted that the claimant is an avid gardener (5F:26). By October 2022 she was advised to begin stretching exercises and was issued new orthotics due to persistence of her pain (5F:27). Examinations showed no edema but continued to document multiple incurvated borders with deformed thick yellow crumbly nails, and recurrent discrete hyperkeratotic lesions with pain on direct pressure of the plantar central ball bilaterally (5F:28). After receiving the new orthotics, the claimant reported 50% improvement in her pain and was pleased with her results to date, but still adjusting to them.

There are no further treatment records. After the end of the relevant period, the claimant testified that her pain returned and that she now sees her podiatrist every two weeks for treatment. She also testified that she will need to undergo a repeat of the 2022 surgeries.

(ECF No. 8, PageID #: 50-52).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2022.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 1,

4

    2018 through her date last insured of December 31, 2022 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: porokeratosis; idiopathic neuropathy (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) but with the following additional restrictions: She can occasionally climb ladders, ropes or scaffolds, and can frequently climb ramps or stairs.

6. Through the date last insured, the claimant was capable of performing past relevant work as a resident care aide and a groundskeeper. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2018, the alleged onset date, through December 31, 2022, the date last insured (20 CFR 404.1520(f)).

(ECF No. 8, PageID #: 47, 49-50, 53).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

5

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r*

6

*of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Davies raises a single issue on appeal, challenging the ALJ's conclusion that she retained the RFC to complete medium work, which was "the *only* RFC finding supporting a denial of benefits pursuant to SSA's 'grid rules.'" (ECF No. 9 at 5). Plaintiff specifically challenges the ALJ's consideration of her subjective pain testimony, arguing that the "highly conclusory nature of the ALJ's decision – essentially a summary of the evidence followed by a 'therefore the claimant can perform medium work' conclusion' – is not 'analysis' which makes meaningful judicial review possible." (*Id.* at 9). Plaintiff argues that in finding her symptom testimony inconsistent and unsupported by the record, the ALJ improperly relied on her trip to Mexico and avid gardening without considering "that her vacation to Mexico did not involve a lot of standing and walking – but that what little there was did affect her" or that she had to "significantly curtail" her gardening and other activities. (*Id.* at 10). Additionally, Plaintiff argues her ability to perform daily activities is insufficient to support a non-disability finding under Sixth Circuit case law. (*Id.* at 10-11). Plaintiff argues the ALJ also failed to acknowledge that she "has required multiple surgeries when it was expected that only one would be necessary" or that Plaintiff's alleged noncompliance was due to an inability to afford treatment. (*Id.* at 11-12). Thus, Plaintiff argues the RFC is not supported by substantial evidence and remand for further proceedings is appropriate. (*Id.* at 12).

The Commissioner responds that substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms and ultimate RFC finding. (ECF No. 13 at 5). The Commissioner asserts

that "the ALJ wrote a detailed decision setting forth the evidence that led to his reasonable conclusion that Plaintiff's subjective complaints were inconsistent with the evidence in the record as a whole" and this decision illustrates that the ALJ properly relied on the location, duration, frequency, and intensity of Plaintiff's symptoms, the precipitating and aggravating factors, the effectiveness of Plaintiff's medication, treatments she received other than medication, and other measures she used to relieve her symptoms. (*Id.* at 5-6). The Commissioner argues the ALJ also properly relied on an opinion from the State agency medical consultant indicating Plaintiff could perform medium work and Plaintiff's reported activities to her providers during the relevant time. (*Id.* at 7-8). Thus, the Commissioner's position is that "Plaintiff failed to demonstrate any error by the ALJ in evaluating her symptoms." (*Id.* at 9).

Plaintiff replies that the Commissioner's "response simply parrots the ALJ's rationales, without addressing Plaintiff's actual arguments regarding them." (ECF No. 14 at 2).

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). In evaluating a claimant's symptoms, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304. Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that he considered

8

the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms … and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18-cv-1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (*citing Rogers*, 486 F.3d at 248-49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, after summarizing Plaintiff's symptom allegations, the ALJ indicated that while her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her testimony regarding "the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 8, PageID #: 50). The ALJ then summarized Plaintiff's medical record, and provided the following explanation of why he found Plaintiff's testimony inconsistent with the overall record:

> Overall, the medical record does document the claimant's complaints of bilateral foot pain. She has regularly sought treatment through podiatry, but the record documents that treatment beginning in August 2020, almost two years after the alleged onset date. The treatment notes also show that the prescribed treatment was helpful at significantly decreasing the claimant's pain, at times up to 100%. Although her pain returned at times and she was required to seek additional treatment, the treatments have been successful. Furthermore, throughout the majority of the relevant period, the claimant has only required custom orthotics and shoes with occasional instruction on stretching exercises. She has not been advised to stay off her feet

9

>or avoid exertional activities, and there are no positive findings suggesting any abnormality in her gait. The claimant remained active throughout the relevant period, working outdoors performing heavy exertion tasks such as building rock walls, and consistently gardening. While the claimant testified that she has had to scale back on her garden recently, the records during the relevant period show that she was still quite active at that time.
>
>Overall, the record supports no more than a few work related limitations. The undersigned has restricted the claimant to medium exertion in order to avoid exacerbation of her pain. This limitation also addresses any issues related to her non-severe impairments discussed in Finding 3 above, such as the sacroiliitis. The undersigned finds that the claimant's foot pain also limits her ability to climb, again to avoid any exacerbation of level of pain.

(*Id.* at PageID #: 50-52).

This discussion makes clear that the ALJ considered multiple of the relevant factors in finding that Plaintiff's testimony was not fully credible. While the ALJ acknowledged that the record supported that Plaintiff complained of pain in her feet, he noted that there were no treatment records for her feet until almost two years after the alleged onset date and the records contained reports of significant improvement, at times totaling 100%. (ECF No. 8, PageID #: 304, 309 (May 2020 visit noting pain in feet and callouses); 385 (prescribed orthotics in August 2020); 386 (50% improvement with over the counter orthotics in August 2020); 388 (85% improvement with custom orthotics in October 2020); 391 (reporting 100% relief in March 2021, even with increased activity); 397 (80% improvement in April 2022 following surgical excision on right foot); 398 (100% relief with no pain in March 2022 following surgical excision on left foot); 399 (reporting 100% relief with no paint at all in April and June 2022); 378 (50% relief in November 2022 after receiving new custom orthotics)). The ALJ also noted that contrary to Plaintiff's testimony that her impairments impacted her activities, the records included reports to her providers that she continued to do "heavy kind of projects" during the relevant period. (*Id.* at

10

PageID #: 393 (reporting building a rock wall and working outside in May 2021); 396 (reporting "working extensively in her yard" and doing fall cleanup in September 2021)). While the record supports Plaintiff's position that she was initially noncompliant due to inability to afford the custom orthotics (*see id.* at PageID #: 386), the ALJ relied on records indicating Plaintiff was not always complaint with wearing her orthotics even after she received them. (*Id.* at 393 (admitting to not wearing her custom orthotics at certain times); 396 ("Pt admits intermittent complaint w/Tx as she took her elderly mother to Mexico on vacation and she has to return to her home in New York.")).

In addition to relying on Plaintiff's own reports of improvement with treatment, her reported continued activities, and noncompliance, the ALJ highlighted the lack of objective evidence supporting any limitations due to Plaintiff's impairments. As indicated by the ALJ, the record does not contain any recommendation that Plaintiff elevate her legs, and there are "generally minimal findings with no suggestion of difficulty standing or walking." (*Id.* at PageID #: 53; *see id.* at 294-95, 302, 315, 320 (normal physical exams); 309 (exam noting "callous balls of both feet. Parasthesias both feet" but otherwise normal physical exam)). The ALJ also relied on the only medical opinion in the record, in which the State agency consultant concluded Plaintiff retained the ability to perform medium work. (*Id.* at 92-97).

Overall, the ALJ adequately explained his treatment of Plaintiff's subjective pain complaints and RFC finding, and the ALJ's analysis is supported by substantial evidence in the record. Thus, the Court must defer to the ALJ's decision, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanri*, 32 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F..3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not

11

subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citation omitted).  Thus, Plaintiff's argument is without merit.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Davies benefits.

**IT IS SO ORDERED.**

Dated: November 19, 2025

s/ *Carmen E. Henderson*  
CARMEN E. HENDERSON  
U.S. MAGISTRATE JUDGE